**Slip Op. 01-105**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HONORABLE NICHOLAS TSOUCALAS

```
_____
                                        :
AMERICAN SHIP MANAGEMENT, LLC,          :
                                        :
         Plaintiff,                     :
                                        :
         v.                             :
                                        :
UNITED STATES,                          :
                                        :
         Defendant,                     :
                                        :  Consolidated
and                                     :  Court No. 99-03-00151
                                        :
SL SERVICE, INC.,                       :
                                        :
         Plaintiff,                     :
                                        :
         v.                             :
                                        :
UNITED STATES,                          :
                                        :
         Defendant.                     :
_____ :
```

Plaintiffs, American Ship Management, LLC and SL Service, Inc., move for summary judgment pursuant to R. 12(c) of the Rules of the United States Court of International Trade alleging that the undisputed material facts in the case show that United States Customs Service misapplied 19 U.S.C. § 1466, as interpreted by <u>Texaco Marine Servs., Inc. v. United States</u>, 44 F.3d 1539 (Fed. Cir. 1994), by assessing duties on the plaintiffs' dry-docking expenses on a pro-rata basis. Customs has filed a cross-motion for summary judgment contending that Customs acted legally by apportioning the dry-docking expenses on a pro-rata basis in a fashion mimicking the methodology used by Customs for apportionment of expenses between dutiable and non-dutiable foreign work.

**Held:** For the reasons stated below, the plaintiffs' motion and Customs' cross-motion are denied on the ground that there remain triable issues of fact.

[The plaintiffs' motion and Customs' cross-motion are denied.  The parties are to proceed with the litigation on merits.]


Dated: August 17, 2001


Garvey, Schubert & Barer (Charles Routh) for plaintiff American Ship Management, LLC.

Sonnenschein Nath & Rosenthal (Evelyn M. Suarez and Alexander H. Schaefer) and Robert S. Zuckerman, General Counsel, for plaintiff SL Service, Inc.

Stuart E. Schiffer, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara M. Epstein); of counsel: Karen P. Binder, Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendant.

Collier Shannon Scott, PLLC (Lauren R. Howard) for Shipbuilders Council of America, Inc., amicus curiae in support of defendant's cross-motion for summary judgment.


## MEMORANDUM OPINION AND ORDER

**TSOUCALAS, Senior Judge:** Plaintiffs, American Ship Management, LLC and SL Service, Inc. ("plaintiffs"), pursuant to R. 12(c) of the Rules of the United States Court of International Trade, move for summary judgment alleging that the undisputed material facts in the case show that, as a matter of law, United States Customs Service ("Customs") misapplied and misinterpreted the vessel repair statute, 19 U.S.C. § 1466 (1994), by assessing duties on the plaintiffs' dry-docking expenses on a pro-rata basis irrespective of the inspection required by the United States Coast Guard and

American Bureau of Shipping and performed during the dry-docking. Customs has filed a cross-motion for summary judgment contending that Customs acted legally by apportioning the dry-docking expenses incurred by the plaintiffs in a fashion mimicking the methodology used by Customs for apportionment of expenses between dutiable and non-dutiable foreign work.  For the reasons stated below, the plaintiffs' motion and Customs' cross-motion are denied on the ground that there remain triable issues of fact.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1994).

### DISCUSSION

### I.   Undisputed Facts

The case concerns dry-docking duties imposed by Customs on two vessels, specifically, M/V President Truman, a vessel belonging to American Ship Management, LLC, and Sea-Land Pacific, a vessel belonging to SL Service, Inc.  M/V President Truman underwent dry-docking at the Hongkong United Dockyard Ltd., and Sea-Land Pacific was dry-docked in the Hyundai Mipo Dockyard.  Both vessels were put into their scheduled dry-docks to comply with mandatory United States Coast Guard and American Bureau of Shipping regulations

requiring certain inspections and modifications.  During the dry-docking, the vessels, in addition to the mandatory inspections, underwent non-dutiable modifications as well as dutiable repairs. The dry-docking and general service expenses incurred by the vessels were apportioned by Customs in the following manner: (1) the expenses for dutiable repairs were added to the expenses for non-dutiable modifications and inspection; (2) the percentage of this total was calculated representing the expenses ensuing from the dutiable repairs; and (3) the same percentage of the total dry-docking expenses incurred by each vessel was deemed to be a dutiable expense.  See Def.'s Mem. Law Opp'n Pl.s' Mot. Summ. J. Supp Def.'s Cross-Mot. Summ. J. ("Def.'s Mem.") at 22.

## II.  Contentions of the Parties

The plaintiffs assert that the liquidation of dry-docking expenses as dutiable is illegal, even on a pro-rata basis, in view of the following: (1) the fact that the vessels were undergoing a mandatory inspection; and (2) the test posed by Texaco Marine Servs., Inc. v. United States ("Texaco"), 44 F.3d 1539 (Fed. Cir. 1994) prohibits the imposition of duties on the dry-docking undetaken for "mixed purpose."  See Pl.s' Joint Mem. Law Supp. Mot. Summ. J. ("Pl.s' Mem.") at 2.  The plaintiffs also contend that any imposition of duties on a pro-rata basis is per se illegal under

the Texaco test.  See id.

Customs maintains that where dry-docking expenses were incurred for more than one purpose, e.g., both dutiable repairs and a mandatory inspection, such "mixed-purpose" expenses are subject to the imposition of apportioned duties.  See Def.'s Mem. at 7.

## IV.  Analysis

### A.    Statutory Background and the Texaco Test

Section 1466(a) of United States Code, Title 19, provides that

> [t]he equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States . . . shall . . . be liable to entry and the payment of an ad valorem duty . . . on the cost thereof in such foreign country.

19 U.S.C. § 1466(a) (emphasis supplied).

The case at bar involves the interpretation of the term "expenses of repairs" used in 19 U.S.C. § 1466(a).  Prior to the Federal Circuit decision in Texaco, 44 F.3d 1539, Customs used a restrictive interpretation of the term.  For example, Customs did not treat the dry-docking as an "expense of repairs" making dry-docking expenses non-dutiable.  See Texaco, 44 F.3d 1539.  Customs' pre-Texaco treatment was based upon the premise that dry-docking expenses were not "part of" and/or "directly involved" in a

dutiable repair.  See id.

The court in Texaco examined the statutory language, determined the language to be clear and unambiguous, and concluded that it is proper to

> interpret [the term] "expenses of repairs" as covering all expenses (not specifically excepted in the statute) which, but for dutiable repair work, would not have been incurred.  Conversely, [the term] "expenses of repairs" does not cover expenses that would have been incurred even without the occurrence of dutiable repair work.  [In sum,] the "but for" interpretation accords with what is commonly understood to be an expense of a repair.

Texaco, 44 F.3d at 1544 (citations omitted).

The court in Texaco also specified that

> [t]he mere drawing up of a vessel on a dry dock is not a part of her repairs, but is rather a method of making an inspection of her to determine whether any repairs are necessary.  The examination might show the hull to be in perfect condition, requiring no attention of any kind.

Id. at 1546 (citing United States v. George Hall Coal Co., 142 F. 1039 (2d Cir. 1906).

In light of Texaco, 44 F.3d 1539, Customs started assessing duty on the dry-docking expenses which would not have been incurred "but for" dutiable repairs even if the expenses were not "part of" and/or "directly involved" in the repair itself.  See  Def.'s Mem. at 7.

   B.    **Apportionment Under the <u>Texaco</u> Test**

   The plaintiffs assert that any imposition of duties on dry-docking expenses on a pro-rata basis is per se illegal under the <u>Texaco</u> test.  <u>See</u> Pl.s' Mem. at 2.  The plaintiffs point out that "the Federal Circuit has specifically ruled" that "'mixed purpose' dry-docking . . . do[es] not qualify as 'expenses of repairs.'" <u>Id.</u>  While the Court agrees with the plaintiffs' reading of <u>Texaco</u> with regard to "mixed purpose" dry-docking expenses, the Court disagrees with the plaintiffs' unreasonable expansion of the <u>Texaco</u> holding.

   In essence, the court in <u>Texaco</u> delineated two categories of expenses under 19 U.S.C. § 1466(a), specifically: (1) dutiable expenses that would not be undertaken "but for" the need to repair; and (2) non-dutiable expenses undertaken for a purpose either unrelated to repair or for a "mixed purpose" related to a dutiable repair as well as to a non-dutiable activity, e.g., an inspection or modification.  The <u>Texaco</u> classification, however, does not make an apportionment of dry-docking expenses per se illegal if there is a clear identification of the dutiable dry-docking expenses undertaken solely for the purpose of repair and the non-dutiable dry-docking expenses undertaken for a purpose either unrelated to repair or for a "mixed purpose."  <u>See generally</u>, <u>Texaco</u>, 44 F.3d 1539.  Therefore, the Court holds that Customs correctly concluded

that it could apportion dry-docking expenses under the mandate of 19 U.S.C. § 1466(a), as clarified by Texaco, 44 F.3d 1539.

### C. Pro-Rata Apportionment Used by Customs

In the case at bar, the dutiable and non-dutiable dry-docking expenses were apportioned by Customs according to the percentage corresponding to the value of dutiable repairs and non-dutiable expenses incurred by each vessel. See Def.'s Mem. at 22. While the general concept of apportionment of dry-docking expenses does not contradict the holding of Texaco, 44 F.3d 1539, see supra, the particular apportionment used by Customs was arbitrary, capricious and in violation of the classification designated by Texaco, 44 F.3d 1539.

Dry-docking expenses include, among other things, maintenance expenses and the cost of tugs to put the vessel into and out of dry dock.[1] See, e.g., Dahlia Maritime Co. v. M/S Nordic Challenger, 1993 U.S. Dist. LEXIS 10170 (E.D. La. 1993). Consequently, the cost of tugs is an inevitable expense of a mandatory inspection and, thus, is non-dutiable. See Texaco, 44 F.3d 1539. Similarly, all maintenance charges (along with all other charges related to

---

[1]    The latter usually comprises the main expense of the dry-docking process.

the maintenance)[2] associated with the dry-docking during the period of mandatory inspection and/or modifications are non-dutiable expenses under the test posed by Texaco notwithstanding whether or not the vessel undergoes any repair during this period. See id. Therefore, only the maintenance expense of dry-docking for the period of time in excess of that necessary for a mandatory inspection and/or modifications are dutiable under the Texaco test. See id.

While, under an unlikely scenario, such calculation may create a result accidently corresponding to that reached by Customs in the given case, this possibility is irrelevant to the validity of Customs' method of calculation because the method violates, as a matter of law, the test offered by Texaco, 44 F.3d 1539. Customs shall obtain from the plaintiffs the information necessary to make a calculation supported by logic rather than random guessing.[3]

---

[2] The term "maintenance" in the context of dry-docking usually associates with utilities and analogous services, the related charges could include, for example, the procedures and tools necessary to bring and keep the vessel in a stable position.

[3] Customs asserts that the plaintiffs failed to satisfy the plaintiffs' "burden" because, according to Customs, there is no pertinent information in the plaintiffs' brief. This Court presumes that Customs was referring to the term "burden of production." The term "burden of production" defines the burden on one party to introduce sufficient evidence to avoid judgment against that party as a matter of law. Specifically, the plaintiff shall go forward with the evidence on the issue, thus, shifting the burden to the defendant to produce evidence showing otherwise.

## V.   CONCLUSION

This Court finds that there are genuine issues of material fact as to what dry-docking maintenance charges (along with all other charges related to the maintenance) were undertaken by the plaintiffs during the dry-docking in excess of that necessary for the mandatory inspections and/or modifications.  Because triable issues of fact remain, the plaintiffs' motion and Customs' cross-motion for summary judgment are denied, and it is hereby

**ORDERED** that parties proceed with the litigation on merits.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

DATED:     August 17, 2001
           New York, New York

_____

See, e.g., Environmental Defense Fund, Inc. v. EPA, 548 F.2d 998, 1013 (D.C. Cir. 1976) (noting that the burden of production does not necessarily lay with the same party carrying the burden of persuasion).  In the case at bar, the plaintiffs provided a series of affidavits stating that "the dry-docking expenses would have been incurred regardless of whether or not any repair work took place."  See Pl.s' Mem., Ex. 1.  Consequently, the plaintiffs came forward with the evidence sufficient to shift the burden to Customs to show otherwise and justify the apportionment method used by Customs.