**Slip Op. 02-121**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE NICHOLAS TSOUCALAS

_____
                                        :
SL SERVICE, INC.,                       :
                                        :
         Plaintiff,                     :
                                        :    Consol. Court No.
         v.                             :    99-03-00151
                                        :
UNITED STATES,                          :
                                        :
         Defendant.                     :
_____:


        Plaintiff, SL Service, Inc. ("SL Service"), moves for summary judgment pursuant to USCIT R. 56 alleging that the undisputed material facts in this case show that, as a matter of law, the United States Customs Service ("Customs") misapplied the vessel repair statue, 19 U.S.C. § 1466 (1994), as interpreted in American Ship Management, LLC v. United States, 25 CIT ___, 162 F. Supp. 2d 671 (2001), and Texaco Marine Servs., Inc. v. United States, 44 F.3d 1539 (Fed. Cir. 1994), by assessing vessel repair duties on SL Service's dry-docking expenses on a pro-rata basis during a period of mandatory inspections by the American Bureau of Shipping ("ABS") and the United States Coast Guard ("USCG").  Customs contends that it acted legally by apportioning the dry-docking expenses on a pro-rata basis in a fashion mimicking the methodology used by Customs for apportionment of expenses between dutiable and non-dutiable work.  Since no genuine issue as to any material fact remains, and for the reasons stated below, SL Service's motion for summary judgment is granted.

        **Held**: For the reasons stated below, and since no genuine issue as to any material fact remains, SL Service's motion for summary judgment is granted.

[SL Service's motion is granted.]

                                        Dated: October 15, 2002


        Sonnenschein Nath & Rosenthal (Evelyn M. Suarez) and Robert S. Zuckerman, Vice President and General Counsel of CSX Lines, LLC, for plaintiff SL Service, Inc.

Robert D. McCallum, Jr., Assistant Attorney General; John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara S. Williams); of counsel: Karen P. Binder, Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendant.

Collier Shannon Scott, PLLC (Lauren R. Howard) for amicus curiae Shipbuilders Council of America, Inc.

## MEMORANDUM OPINION AND ORDER

**TSOUCALAS**, **Senior Judge**: Plaintiff, SL Service, Inc. ("SL Service"), moves for summary judgment pursuant to USCIT R. 56 alleging that the undisputed material facts in this case show that, as a matter of law, the United States Customs Service ("Customs") misapplied the vessel repair statue, 19 U.S.C. § 1466 (1994), as interpreted in American Ship Management, LLC v. United States, 25 CIT ___, 162 F. Supp. 2d 671 (2001), and Texaco Marine Servs., Inc. v. United States, 44 F.3d 1539 (Fed. Cir. 1994), by assessing vessel repair duties on SL Service's dry-docking expenses on a pro-rata basis during a period of mandatory inspections by the American Bureau of Shipping ("ABS") and the United States Coast Guard ("USCG"). Customs contends that it acted legally by apportioning the dry-docking expenses on a pro-rata basis in a fashion mimicking the methodology used by Customs for apportionment of expenses between dutiable and non-dutiable work. Since no genuine issue as to any material fact remains, and for the reasons stated below, SL Service's motion for summary judgment is granted.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2000).

**DISCUSSION**

**I.   Background**

On November 9, 1999, this Court granted an Order designating Consolidated Court Number 99-03-00151 a test case.  Originally, this case included SL Service, Inc. and a second plaintiff, namely American Ship Management ("ASM").  ASM and SL Service filed a joint motion for summary judgment before this Court on November 9, 2000, and Customs filed a cross-motion for summary judgment on March 2, 2001.  In American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671, this Court denied both motions and ordered that the parties proceed with the litigation on the merits.

By Order of Partial Dismissal dated February 28, 2002, ASM was dismissed, with prejudice, as a party in this pending action.  SL Service proceeded with court ordered discovery and provided Customs with: (a) Sea-Land Pacific Drydock Report NOV/DEC 1995 - HUD - HKG ("Dry-Docking Report"); (b) Sea-Land Pacific Planning Schedule; (c) Spreadsheet prepared by Joseph Breglia; and (d) Declaration of Joseph Breglia.  See Pl. SL Service Inc.'s Mem. Supp. Mot. Summ. J. at 2-3 ("Pl.'s Mem."); see also Pl.'s Mem. at Exs. A-D.

## II.  Undisputed Facts

This case concerns dry-docking duties imposed by Customs on the vessel Sea-Land Pacific owned by SL Service.[1]  See American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671.  The Sea-Land Pacific was dry-docked at the Hongkong United Dockyards Ltd. from November 22, 1995, through December 1, 1995, in order to comply with mandatory USCG and ABS regulations requiring certain inspections and modifications.  During the dry-docking, the Sea-Land Pacific underwent non-dutiable modifications as well as dutiable repairs.  The Sea-Land Pacific was not dry-docked for a period of time in excess of that necessary for mandatory inspections and/or modifications pursuant to the guidelines set forth in American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671.

## III. Contentions of the Parties

SL Service asserts that the Dry-Docking Report and additional exhibits provided to Customs adequately show that "non-dutiable mandatory inspections and modifications occurred . . . from November 22, 1995 through December 1, 1995, and that no dry-docking occurred beyond the period [necessary for] non-dutiable mandatory

---

[1]   Plaintiff properly filed a Motion to Amend Summons, changing plaintiff's name from Sea-Land Service, Inc. to SL Service, Inc., on July 27, 2000.  This Court granted SL Service's motion on August 29, 2000, and considers Customs' naming of plaintiff as Sea-Land Service, Inc., instead of SL Service, Inc. in this summary judgment proceeding, a mere oversight.

inspections and/or modifications [to take place]."  Pl.'s Mem. at

3; see also Pl.'s Statement of Material Facts Not in Issue at 2-3.

SL Service contends that such documents support the argument that

under the test established by Texaco, 44 F.3d 1539, and articulated

in American Ship Management,  25 CIT ___, 162 F. Supp. 2d 671, none

of the maintenance expenses of dry-docking the Sea-Land Pacific are

dutiable and, therefore, summary judgment is appropriate.  See

Pl.'s Mem. at 4-7.

Customs continues to maintain that "the original methodology

used by Customs in this action to apportion the dry-docking costs

was reasonable, proper, and in accordance with law."  Def.'s Mem.

Resp. Pl.'s Mot. Summ. J. at 3.  Customs, however, admits "that the

Sea-Land Pacific was not dry-docked for any period of time in

excess of that necessary for mandatory inspections and/or

modifications pursuant to the guidelines set forth in American Ship

Management[, and that] . . . none of the maintenance expenses of

dry-docking are dutiable in this action."  Id. at 3-4.  Customs

further contends that the discovery produced by SL Service "would

not be generally sufficient to satisfy a plaintiff's burden as set

forth in American Ship Management. . . ."[2]  Id. at 3 n.4.

_____

[2]    The Court is not amused by this argument, and finds that the
evidence produced by SL Service, in addition to the statements
provided by Customs in Defendant's Response to Plaintiff's
Statement of Material Facts, clearly show that the Sea-Land Pacific

(continued...)

IV.  Analysis

    A.  **American Ship Management's** Application of **Texaco**

       1.  **Statutory Background and the Texaco Test**

Section 1466(a) of United States Code, Title 19, provides that

> [t]he equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the <u>expenses of repairs</u> made in a foreign country upon a vessel documented under the laws of the United States . . . shall . . . be liable to entry and the payment of an ad valorem duty . . . on the cost thereof in such foreign country.

19 U.S.C. § 1466(a) (emphasis added).

The case at bar involves the interpretation of the term "expenses of repairs" used in 19 U.S.C. § 1466(a).  Prior to the Federal Circuit decision in <u>Texaco</u>, 44 F.3d 1539, Customs used a restrictive interpretation of the term.  For example, Customs did not treat the dry-docking as an "expense of repairs" making dry-docking expenses non-dutiable.  See <u>Texaco</u>, 44 F.3d 1539.  Customs' pre-Texaco treatment was based upon the premise that dry-docking expenses were not "part of" and/or "directly involved" in a dutiable repair.  See <u>id.</u>

The court in <u>Texaco</u> examined the statutory language, determined the language to be clear and unambiguous, and concluded

---

(...continued)
was only dry-docked for the length of time necessary to perform non-dutiable mandatory inspections and/or modifications.

that it is proper to

> interpret [the term] "expenses of repairs" as covering
> all expenses (not specifically excepted in the statute)
> which, but for dutiable repair work, would not have been
> incurred.  Conversely, [the term] "expenses of repairs"
> does not cover expenses that would have been incurred
> even without the occurrence of dutiable repair work.  [In
> sum,] the "but for" interpretation accords with what is
> commonly understood to be an expense of a repair.

Texaco, 44 F.3d at 1544 (citations omitted).

> The court in Texaco also specified that

> [t]he mere drawing up of a vessel on a dry dock is not a
> part of her repairs, but is rather a method of making an
> inspection of her to determine whether any repairs are
> necessary.  The examination might show the hull to be in
> perfect condition, requiring no attention of any kind.

Id. at 1546 (citing United States v. George Hall Coal Co., 142 F.

1039 (2d Cir. 1906)).

In American Ship Management, 25 CIT at ___, 162 F. Supp. 2d at

674, this Court observed that Customs started assessing duty on the

dry-docking expenses which would not have been incurred "but for"

dutiable repairs even if the expenses were not "part of" and/or

"directly involved" in the repair itself, in light of the Texaco

decision.

### 2. Apportionment Under the Texaco Test

In American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671,

the plaintiff, SL Service, argued that any imposition of duties on

dry-docking expenses on a pro-rata basis is per se illegal under the Texaco test. SL Service further pointed out that "the Federal Circuit has specifically ruled" that "mixed purpose dry-docking . . . do[es] not qualify as expenses of repairs." American Ship Management, 25 CIT at ___, 162 F. Supp. 2d at 674 (internal quotations and citation omitted). While the Court agreed with the plaintiff's reading of Texaco with regard to "mixed purpose" dry-docking expenses in American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671, the Court disagreed with the plaintiff's unreasonable expansion of the Texaco holding.

In essence, the court in Texaco delineated two categories of expenses under 19 U.S.C. § 1466(a), specifically: (1) dutiable expenses that would not be undertaken "but for" the need to repair; and (2) non-dutiable expenses undertaken for a purpose either unrelated to repair or for a "mixed purpose" related to a dutiable repair as well as to a non-dutiable activity, e.g., an inspection or modification. The Texaco classification, however, does not make an apportionment of dry-docking expenses per se illegal if there is a clear identification of the dutiable dry-docking expenses undertaken solely for the purpose of repair and the non-dutiable dry-docking expenses undertaken for a purpose either unrelated to repair or for a "mixed purpose." See generally, Texaco, 44 F.3d 1539. Therefore, the Court held that Customs correctly concluded

that it could apportion dry-docking expenses under the mandate of 19 U.S.C. § 1466(a), as clarified by <u>Texaco</u>, 44 F.3d 1539.

### 3. Pro-Rata Apportionment Used by Customs

In <u>American Ship Management</u>, 25 CIT ___, 162 F. Supp. 2d 671, the dutiable and non-dutiable dry-docking expenses were apportioned by Customs according to the percentage corresponding to the value of dutiable repairs and non-dutiable expenses incurred by each vessel.  While the general concept of apportionment of dry-docking expenses does not contradict the holding of <u>Texaco</u>, 44 F.3d 1539, the particular apportionment used by Customs was arbitrary, capricious and in violation of the classification designated by <u>Texaco</u>, 44 F.3d 1539.

Dry-docking expenses include, among other things, maintenance expenses and the cost of tugs to put the vessel into and out of dry dock.[3]  <u>See, e.g.</u>, <u>Dahlia Maritime Co. v. M/S Nordic Challenger</u>, 1993 U.S. Dist. LEXIS 10170 (E.D. La. 1993).  Consequently, the cost of tugs is an inevitable expense of a mandatory inspection and, thus, is non-dutiable. <u>See</u> <u>Texaco</u>, 44 F.3d 1539. Similarly, all maintenance charges (along with all other charges related to

---

[3]     The latter usually comprises the main expense of the dry-docking process.

the maintenance)[4] associated with the dry-docking during the period of mandatory inspection and/or modifications are non-dutiable expenses under the test posed by Texaco notwithstanding whether or not the vessel undergoes any repair during this period. See id. Therefore, only the maintenance expense of dry-docking for the period of time in excess of that necessary for a mandatory inspection and/or modifications are dutiable under the Texaco test. See id.

While, under an unlikely scenario, such calculation may create a result accidently corresponding to that reached by Customs in the given case, this possibility is irrelevant to the validity of Customs' method of calculation because the method violates, as a matter of law, the test offered by Texaco, 44 F.3d 1539. Accordingly, this Court, in American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671, ordered Customs to obtain from SL Service the information necessary to make a calculation supported by logic rather than random guessing.[5]

---

[4] The term "maintenance" in the context of dry-docking usually associates with utilities and analogous services. The related charges could include, for example, the procedures and tools necessary to bring and keep the vessel in a stable position.

[5] In American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671, Customs asserts that SL Service failed to satisfy the plaintiff's "burden" because, according to Customs, there was no pertinent information in the plaintiff's original brief. This Court presumed that Customs was referring to the term "burden of production." The

(continued...)

### B.    Determination at Bar

"On a motion for summary judgment, it is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action."  Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) (citation omitted).  In this case, the parties now stipulate to the central fact at issue, namely, that the Sea-Land Pacific was not dry-docked for a period of time longer than that necessary to perform the mandatory inspections and/or modifications pursuant to the guidelines set forth in American Ship Management, 25 CIT ___, 162 F. Supp. 2d 671.  In accordance with the holding in American Ship Management, this Court finds that SL Service met its "burden of production," and therefore SL Service's motion for summary judgment is granted.

---

(...continued)
term "burden of production" defines the burden on one party to introduce sufficient evidence to avoid judgment against that party as a matter of law.  Specifically, the plaintiff shall go forward with the evidence on the issue, thus, shifting the burden to the defendant to produce evidence showing otherwise.  See, e.g., Environmental Defense Fund, Inc. v. EPA, 179 U.S. App. D.C. 43, 548 F.2d 998, 1013 (D.C. Cir. 1976) (noting that the burden of production does not necessarily lay with the same party carrying the burden of persuasion).  In the case at bar, SL Service and Customs now stipulate that the vessel, Sea-Land Pacific, was not dry-docked for a period longer than that necessary to perform the mandatory inspections and/or modifications required by the USCG and ABS.

## V.    CONCLUSION

For the foregoing reasons, the Court grants SL Service's motion for summary judgment.  Judgment will be entered accordingly.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    October 15, 2002
          New York, New York